IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-00599-LTB-MEH

BMGI CORPORATION, a Delaware corporation,

      Plaintiff,

v.

ILONA KIRZHNER,

      Defendant.

___

ORDER
___

      This matter is before me on Defendant Ilona Kirzhner's ("Kirzhner") Motion to Dismiss Plaintiff's Verified Complaint and Jury Demand **[Doc #6]**. Kirzhner moves pursuant to Fed. R. Civ. Pro. 12(b)(6) to dismiss Plaintiff BMGI Corporation's ("BMGI") claims. After consideration of the parties' arguments, and for the reasons stated below, I DENY Kirzhner's motion.

### I. Background

      BMGI, a Delaware corporation with its principal place of business in Denver, Colorado, brings both a breach of contract claim and an unjust enrichment claim against Kirzhner, a resident of Virginia. BMGI asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Both claims stem from a 2003 loan agreement between the parties, but I must paint a picture depicting more than just that contract to illustrate a more complete context for this action. (Prior to 2009, the corporate entity involved in the transactions below was Evergreen Industries, Inc. ("Evergreen"). In 2009, Evergreen and BMGI statutorily merged, with BMGI as the surviving entity

and the successor-in-interest to all of Evergreen's contracts, including the loan agreement that is the subject of BMGI's claims. Kirzhner does not dispute this. For ease and clarity, I will refer to BMGI henceforth, even in the pre-2009 transactions where Evergreen was the actor.) The allegations in BMGI's complaint and the public records explain the following:

In December 2003, BMGI and Kirzhner entered into a loan agreement whereby BMGI loaned Kirzhner the principal sum of $130,000 with interest accruing at 5 percent per annum (the "Loan"). Kirzhner agreed to repay all of the Loan's principal and interest on or before March 15, 2005.

In 2004, Kirzhner entered into a stock purchase agreement (the "Stock Sale Agreement"), with BMGI and one of its shareholders, David Silverstein ("Silverstein"), in which Silverstein purchased Kirzhner's BMGI stock. Silverstein paid for the stock by executing and delivering a promissory note to Kirzhner (the "Note").

Then, in May 2005, Kirzhner, Silverstein, and BMGI attempted to negotiate an agreement to satisfy the Loan involving the Stock Sale Agreement and the Note (the "Compromise"). Under the Compromise, Kirzhner offered to satisfy the Loan by reducing the amount that Silverstein owed her under the Note by $130,0000–the principal of the Loan–plus $8,666.56 in interest. BMGI believed that Kirzhner had agreed to the Compromise agreement and that it was enforceable.

Here is where a larger canvass for the factual painting becomes necessary. In November 2009, Kirzhner–the defendant in the action before me–filed a lawsuit against Silverstein, BMGI, and others in U.S. District Court for the District of Colorado (the "Original Action"). The Original Action, *Kirzhner v. Silverstein et al.*, 1:09-cv-02858-RBJ-BNB, is ongoing and is currently before Judge Jackson. One of Kirzhner's claims in the Original Action is that BMGI breached the Stock

Sale Agreement. On March 1, 2011, as part of the Original Action, Kirzhner served BMGI with an expert witness disclosure, which included a report from RGL Forensics. That report illuminated that Kirzhner has taken the position in the Original Action that she never agreed to the Compromise, and, with respect to her damages, it would therefore be improper to subtract $138,666.56 (the amount stipulated in the Compromise) from the amount for which she is suing under the Note. Prior to receiving this report, BMGI believed that Kirzhner had agreed to the Compromise.

BMGI–a defendant in the Original Action–filed the action before me now on March 10, 2011, bringing two claims pertaining exclusively to the Loan. BMGI alleges that Kirzhner failed to pay any principal or interest due per the Loan. In response to Kirzhner's alleged default, BMGI asserts a breach of contract claim and an unjust enrichment claim, alleging that Kirzhner owes it the principal sum of $130,000 plus interest accruing at 5 percent from December 15, 2003. BMGI moved in the Original Action to have it consolidated with this case, but that motion was denied. *See Kirzhner v. Silverstein et al.*, 2011 WL 3568265 (D.Colo. Aug. 15, 2011).

## II. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556). When deciding a motion to dismiss under the rule, the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v.*

*Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 129 S.Ct. at 1950. Importantly, while utilizing this standard of review, a court may take judicial notice of matters of public record without converting Defendants' motion into one for summary judgment under Rule 56. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004); *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). Here, noteworthy public records are those pertaining to the Original Action.

### III. Analysis

Kirzhner's motion contends that BMGI's claims should be dismissed for two reasons. (I note parenthetically that Kirzhner insinuates that BMGI's claims here should have been asserted in the Original Action as compulsory counterclaims pursuant to Fed. R. Civ. P 13(a) or as affirmative defenses and conjectures why BMGI did not so assert. Pl.'s Mot. 1-3; Pl.'s Reply 5. Kirzhner does not, however, proffer this as an argument. *See* Pl.'s Mot. 5-11. BMGI did not address the issue in its response. *See* Def.'s Resp. For these reasons, I decline to address whether BMGI's two claims should have been asserted in the Original Action and instead confine my analysis to those arguments affirmatively made.) The first is that BMGI was already paid the $138,666.56 it claims it is owed. The second is that BMGI's claims are barred by the statute of limitations. I address these in turn. The parties agree that Colorado substantive law applies.

### A.

Kirzhner first argues that Silverstein verily reduced his payments under the Note by $138,666.56 pursuant to the Compromise such that the Loan has been satisfied. (To be clear, this position is inconsistent with Kirzhner's position in the Original Action, which I presented in Part

I, *supra*.)  She contends that BMGI's complaint "acknowledges setoff and payment."  Therefore, Kirzhner argues, BMGI has failed to allege damages and thus failed to state claims for breach of contract and unjust enrichment. I disagree with Plaintiff for the reasons below.

I begin with BMGI's breach of contract claim.  Under Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011) (quoting *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted)).

Paragraphs 15 and 16 allege the existence of the Loan–the contract that Kirzhner is said to have breached–and provide its execution date and terms.  *See* Compl. ¶¶ 15-16, 33.  The complaint also sufficiently alleges the second required element.  Paragraph 15 avers that BMGI "lent Kirzhner the principal sum of $130,000 with interest to accrue at a rate of five percent per annum."  Paragraph 34 further alleges that BMGI has "performed any conditions necessary to be entitled to receive payment under the Loan."  In no uncertain terms, BMGI alleges that Kirzhner breached the Loan by failing to repay it when it became due.  *See* Compl. ¶¶ 28, 35. These are all well-pled facts, and I must therefore assume their truth. *Teigen*, 511 F.3d at 1078.

Lastly, the complaint, in multiple locations, states that BMGI has been damaged and is owed the principal sum of $130,000 plus 5 percent interest beginning on the Loan's execution date. *See* Compl. ¶¶ 30, 36. It is this last element that Kirzhner feebly contests.  She first distorts BMGI's complaint. Citing paragraphs 18-20 of the complaint, she states that "BMGI [] acknowledges setoff of payment to Kirzhner, and that the setoffs were made in compromise and payment of the loan

5

obligation." These paragraphs do no such thing. Nor does any other paragraph in the complaint. They simply explain the Compromise and are silent with respect to whether Silverstein reduced his payments under the Note pursuant thereto; they do not allege or concede that fact. *See* Compl.¶¶ 18-20. Kirzhner also neglects the standard of review. BMGI has proffered well-pled facts, and I must therefore assume their truth and draw all reasonable inferences therefrom in its favor. *Teigen*, 511 F.3d 1078. This means I must infer that the Loan has not been satisfied by payment or offset.

The allegations pertaining to BMGI's breach of contract claim are more than "threadbare recitals," and they are supported by more than "mere conclusory statements." *See Iqbal*, 129 S.Ct. at 1949. BMGI proffers specific, concrete facts that "nudge[s] [its] claim[] across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). The breach of contract claim therefore withstands the motion to dismiss.

I now address whether BMGI's claim for unjust enrichment is also plausible and conclude that it is. "Unjust enrichment is a form of contract, or quasi-contract, implied by law that does not rely on a promise between parties." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009). The elements of the claim in Colorado are the following: "(1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it." *Id.* (citing *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008)). Kirzhner again marshals the argument that BMGI "acknowledges" in its complaint that the Loan has been satisfied by offsetting reductions in Silverstein's payments to her under the Note. Kirzhner argues that, as a corollary, she therefore has not retained any benefit or has paid for it–a conclusion I surmise because she does not so specify.

This argument again fails. BMGI avers in its complaint that Kirzhner has not repaid the

money she was obligated to repay under the Loan and that it would be inequitable for her not to do so. *See* Compl. ¶¶ 28, 37, 40, 41. Moreover, as I discussed *supra*, BMGI provides well-pled facts for its claims, detailing the date, parties, terms, and context for the Loan. I must thus assume the truth of these averments and draw all reasonable inferences therefrom in a light favorable to BMGI. *Teigen*, 511 F.3d at 1078. And, again, Kirzhner's interpretation of BMGI's motion is at best strained, especially when I draw all reasonable inferences in BMGI's favor. Nowhere does BMGI affirmatively state or otherwise concede that Silverstein reduced his payments under the Note to Kirzhner. Under the applicable standard, I therefore determine that it is plausible that Kirzhner continues to retain the benefit of the Loan and that allowing her to continue to do so would be unjust.

With respect to the unjust enrichment claim, the complaint's averments are not so general that they encompass a wide swath of cond`uct, much of it innocent. *See Robbins v*, 519 F.3d at 1247. Instead, they "raise [the] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The claim is thus plausible. *Id.* Accordingly, it too withstands the motion to dismiss.

**B.**

Kirzhner next argues that BMGI's claims are barred by the applicable statute of limitations. In Colorado, an action may be dismissed for the failure to state a claim if the complaint, as alleged, demonstrates that the applicable statute of limitations bars the claim therein. *See, e.g.*, *Sweeney v. United Artists Theatre Circuit, Inc.*, 119 P.3d 538 (Colo. App. 2005), *and see Wasinger v. Reid*, 705 P.2d 533 (Colo. App. 1985). I address the breach of contract claim first.

Kirzhner asserts that Colo. Rev. Stat. § 13-80-101(1)(a) ("Section 101(1)(a)"), prescribes the controlling statute of limitations for both of BMGI's claims. She quotes the statute as providing that

7

"[t]he following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within three years after the cause of action accrues, and not thereafter: (a) All contract actions, including personal actions." Section 101(1)(a); Pl.'s Mot. 8. Citing certain corresponding accrual rules, Kirzhner's position is that BMGI's claims accrued in the spring of 2005 and that the statute of limitations thus tolled in the spring of 2008, three years before BMGI brought the claims in the instant action. I disagree.

For reasons that are both inexplicable and disquieting, Kirzhner omits the final, crucial clause of Section 101(1)(a). In its entirety, that section states the following:

> "(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within three years after the cause of action accrues, and not thereafter: (a) All contract actions, including personal contracts and actions under the "Uniform Commercial Code", *except as otherwise provided in section 13-80-103.5*; . . ."

Section 101(1)(a) (emphasis added). Turning, then, as the statute directs, one finds that § 13-80-103.5 cleaves certain types of contracts from Section 101(1)(a). As pertinent here,

> (1) The following actions shall be commenced within six years after the cause of action accrues and not thereafter: (a) All actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action, all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt . . . .

Colo. Rev. Stat. § 13-80-103.5(1)(a) ("Section 103.5(1)(a)"); *accord Mortgage Investments Corp. v. Battle Mountain Corp.*, 70 P.3d 1176 (Colo. 2003) (holding that the six-year prescription in Section 103.5(1)(a) governs a claim for a default on a promissory note). The Colorado Supreme Court has held that Section 103.5(1)(a) "encompasses *all* actions for the enforcement of rights set forth in *any* instrument securing payment of or evidencing any debts." *Mortgage*, 70 P.3d at 1185 (internal quotations omitted). Naturally, then, "[a]n action for default on a promissory note falls

within the six-year statute of limitations period." *Id.* at 1184.

BMGI seeks to enforce its right to repayment under the Loan, an instrument it alleges secures and evinces Kirzhner's debt. The Loan sets forth the amount Kirzhner owes BMGI: $130,000 in principal plus 5 percent interest accruing from December 15, 2003. Accepting these allegations as true, as I must, *see Teigen*, 511 F.3d at 1078, the debt is therefore liquidated or determinable. *See Rotenberg v. Richards*, 899 P.2d 365 (Colo. App. 1995) (finding that an amount is either liquidated or determinable for purposes of Section 103.5(1)(a) if an agreement sets forth a method for determining the amount due, regardless of the need to refer to facts external to the agreement). BMGI's breach of contract claim thus plainly falls within Section 103.5(1)(a) and therefore has a six-year statute of limitations. *See Mortgage*, 70 P.3d at 1185; *Interbank Investments, L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 ("Whether the breach of contract claims are governed by the contract or the debt limitations period depends upon whether defendants' obligation to plaintiff qualifies as either 'a liquidated debt or unliquidated, determinable amount of money due' for purposes of Section 103.5(1)(a). If it does, then the six-year debt limitations period applies; if it does not, then the three-year contract limitations period applies." ). I also note that "if the amount of a claim is readily calculable or ascertainable," as it is here, "a debtor's dispute of or defenses against such claim, or any setoff or counterclaim interposed to such claim, does not affect the character and classification of that claim as being liquidated." *Rotenberg*, 899 P.2d at 367.

I likewise conclude that BMGI's unjust enrichment claim has a six-year statute of limitations. Unjust enrichment claims are not specifically listed in § 13-80-103.5. *See* Colo. Rev. Stat. § 13-80-103.5. In Colorado, however, instead of categorically applying the three-year rule in Section 101(1)(a) to unjust enrichment claims, a court must apply the statute of limitations that is

most analogous. *See, e.g.*, *Interbank*, 12 P.3d at 1229-30 (explaining that for equitable actions, such as unjust enrichment, "a court will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character" and applying the statute of limitations analysis applicable to plaintiff's contract claims to the laches analysis applicable to the unjust enrichment claims). Here, BMGI asserts that Kirzhner has failed to repay the Loan, which has a specified sum and due date, and that retaining those funds constitutes an unjust enrichment. The types of cases most akin are an action to collect on a liquidated or unliquidated, determinable debt and one seeking to enforce BMGI's right to repayment per a written instrument securing the payment of or evidencing a debt. Consequently, the six-year period in Section 103.5(1)(a) applies.

Kirzhner relies on *Rotenberg*, *supra*, for the proposition that Section 101(1)(a) applies to all unjust enrichment claims. This is futile, for two reasons. First, it overstates the case. Section 101(1)(a) does not categorically apply to an unjust enrichment claim. *See, e.g.*, *Interbank*, 12 P.3d at 1229-30 (applying Section 103.5(1)(a) to an unjust enrichment claim). Second, *Rotenberg* is factually distinguishable from the instant matter. The *Rotenberg* court held that an unjust enrichment claim was governed by the three-year limitations period because the plaintiff sought not a "specific, determinable amount," but rather, "reasonable compensation for the services rendered in an amount to be determined by the fact finder." 899 P.2d at 368. By contrast, here, BMGI's unjust enrichment claim seeks an amount that is "capable of ascertainment by reference to [the Loan] or by simple calculation," making the amount liquidated under Section 103.5(1)(a). *Id.* at 367. And recall that because the amount of the unjust enrichment claim is readily calculable or ascertainable, Kirzhner's "dispute of or defenses against such claim . . . does not affect the character and classification of that claim as being liquidated." *Id.* (citing cases).

After concluding that Section 103.5(1)(a) prescribes the limitation period for the claims, I must now determine when the claims accrued and whether BMGI filed this action within six years thereafter. "A claim for relief on a promissory note accrues the day the note matures or the date of default." *Mortgage*, 70 P.3d 1184; *accord* Colo. Rev. Stat. § 13-80-108(4) ("A cause of action for debt, obligation, money owed, or performance shall be considered to accrue on the date such debt, obligation, money owed, or performance becomes due."). The Loan was due on March 15, 2005. Hence, the breach of contract claim accrued, and the six-year clock began ticking, when Kirzhner did not pay by that day. And because I use the most analogous limitations rule for the unjust enrichment claim, *see Interbank*, 12 P.3d at 1229-30, which I concluded was an action to recover a debt, the unjust enrichment claim also accrued on March 15, 2005. *See id.* (applying breach of contract accrual rules to an unjust enrichment claim). BMGI therefore had until March 15, 2011, to bring its claims; it brought them on March 10, 2011. Accordingly, its claims are not time-barred.

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Kirzhner's Motion to Dismiss Plaintiff's Verified Complaint and Jury Demand **[Doc #6]** is DENIED.

Date: December   15  , 2011 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE